IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| 3M Company,<br>a Delaware corporation,<br><br>and<br><br>3M Innovative Properties Company,<br>a Delaware corporation,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>Continental Diamond Tool Corp.<br>an Indiana corporation,<br><br>　　　　　　Defendant. | CASE NO.: 1:21-cv-274 |

## **COMPLAINT FOR PRELIMINARY INJUNCTION AND DAMAGES**

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively, "3M"), for their Complaint against Defendant Continental Diamond Tool Corp ("CDT"), allege as follows:

## **INTRODUCTION**

1. 3M is a global leader in advanced superabrasive technologies. Its superabrasive technologies have helped improve productivity and cut costs for customers in virtually every industrial sector—automotive, aerospace, oil and gas, cutting tool, primary metal, glass, and more.

2. CDT is a direct competitor of 3M in the superabrasives industry. On information and belief, CDT has no business interests that are different than 3M's business interests.

3. CDT has a pattern and practice of inducing breaches of 3M's Employee Agreement to gain an unfair advantage over 3M.

4. On or about September 17, 2018, 3M filed suit against CDT and former 3M employee Walter P. Baumbach ("the Baumbach Action"). The lawsuit alleged that CDT raided

3M employees for improper competitive gain and induced Mr. Baumbach to use or disclose 3M's confidential information and trade secrets.

5. In March 2019, CDT settled that lawsuit with 3M, specifically its 3M's Precision Grinding & Finishing ("3M PG&F") business. Since settling that lawsuit,[1] CDT has hired around or about eight former 3M employees.

6. CDT has repeatedly assured 3M that it is respecting the terms of 3M's contracts with its former employees. CDT has repeatedly claimed that it is not using 3M's confidential information. CDT has repeatedly claimed that it is respecting the post-termination employment restrictions in 3M's contracts with its former employees. On information and belief, those assurances were false.

7. 3M brings this action to make CDT stop its unlawful conduct. CDT has intentionally procured a breach—and likely many breaches—of 3M's contracts with its former employees. 3M therefore seeks equitable relief in the form of a preliminary injunction and damages.

## PARTIES

8. Plaintiff 3M Company is a corporation organized under the laws of the State of Delaware, having its principal place of business at 3M Center, St. Paul, Minnesota 55144.

9. Plaintiff 3M Innovative Properties Company is a wholly owned subsidiary of 3M Company with its principal place of business at 3M Center, St. Paul, Minnesota 55144.

---

[1] 3M does not assert—and affirmatively disclaims—claims or causes of action against CDT to the extent they arose before the settlement was reached and the prior claims dismissed with prejudice. 3M only asserts claims or causes or action based on conduct that postdates the resolution of the prior matter and any associated releases.

2

10. Defendant CDT is an Indiana corporation with its principal place of business in New Haven, Indiana.

## JURISDICTION & VENUE

11. This Court has original subject-matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the claims are between citizens of different states.

12. Venue is appropriate under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this dispute occurred within this district, and because CDT is subject to the Court's personal jurisdiction here.

## FACTS

### I. 3M Is a Global Leader in the Superabrasives Industry.

13. 3M is a leader in the superabrasives industry, with a worldwide presence and strong reputation for quality products and expertise. For over a century, from its earliest beginnings, 3M has developed and marketed innovative abrasive technology.

14. 3M has devoted substantial resources over its long history to developing and innovating its superabrasives product lines, which include, among others, vitrified CBN and metal-bonded abrasives. 3M has expended a considerable amount of time and effort and large sums of money to develop confidential information about the methods, equipment, and processes, among other things, used in its super-abrasive product lines and to educate its employees on the same. 3M has also developed and employed extensive measures to protect the confidential nature of information about the processes and products it has developed.

**II.     CDT Recruits and Hires 3M's Technical and Sales Personnel**

15.     On information and belief, CDT has recruited and hired 3M's technical and sales personnel, current and former, in order to unlawfully capitalize on the goodwill, specialized knowledge, and know-how of 3M's employees.

**B.     3M's Employee Agreement**

16.     Excluding Walt Baumbach, CDT currently has approximately eight former 3M employees currently working for it: Troy Giacherio, Ian Bennett, Vianney Flores, Ben Fisher, Ricardo Reyes, Tim Keene, and Paul Christy ("Former Employees"). Another former 3M employee, Chad Wesner, may also have recently joined CDT in breach of his 3M employee agreement; if so, he is included in the definition of Former Employees.

17.     Each of the Former Employees—as consideration for their employment by 3M— agreed to be bound by 3M's employee agreement ("the Employee Agreement"). Among other things, after employment with 3M ends, the Employee Agreement requires the Former Employees to keep 3M's confidences. *See* 3M Employee Agreement, attached as **Exhibit A** hereto.

18.     The Employee Agreement defines Confidential Information to mean "information, including but not limited to trade secrets, which is not generally known and is proprietary to 3M including, by way of example and without limitation, information about processes, products, systems, services, research, development, know-how, designs, formulas, compilations, manufacturing purchasing, accounting, engineering, marketing, merchandising, selling, leasing, servicing, finance and business systems and techniques. . . . It shall be presumed that all such information which is disclosed to me or to which I obtain access during the period of my employment, whether originated by me or by others, and which I have reasonable basis to believe

is Confidential Information or is treated by 3M as Confidential Information is Confidential Information regardless of whether the information is marked as confidential." *Id.* at ¶ B.

19. The Former Employees agreed not to use or disclose Confidential Information and, upon termination, to return any Confidential Information the Former Employee possessed to 3M. As set forth in Section 3 of the Employee Agreement:

> **I AM OR WILL BE EMPLOYED BY 3M IN A CAPACITY IN WHICH I MAY RECEIVE OR CONTRIBUTE TO CONFIDENTIAL INFORMATION. IN CONSIDERATION OF SUCH EMPLOYMENT, AND THE WAGES OR SALARY AND OTHER EMPLOYEE BENEFITS IN COMPENSATION FOR MY SERVICES, AND IN CONSIDERATION OF BEING GIVEN ACCESS TO CONFIDENTIAL INFORMATION, I AGREE THAT:**
>
> . . .
>
> B. I understand and agree that my employment creates a relationship of confidence and trust between me and 3M with respect to Confidential Information. . . . I will never, either during my employment by 3M, or thereafter for so long as applicable law provides, use or disclose any Confidential Information . . .
>
> . . .
>
> D. UPON termination of my employment with 3M, all documents, records and any compositions, articles, devices, computer software, computer diskettes and other storage media, and any other items which disclose or embody Confidential Information including all copies or specimens thereof in my possession (whether at my place of work, at home or elsewhere), that have been prepared or made by me or others, will be left with or immediately returned to 3M.
>
> . . .

*Id.*

20. In addition, the Employee Agreement requires that each of the Former Employees, for a period of two years, must not render services to competing companies without 3M's express

5

permission. Even where such permission is granted, Former Employees must abide by certain restrictions. For those in sales roles:

> If I have been or am employed by 3M in a sales capacity, I will not render services directly or indirectly to any [competing company] involving: (a) the development, manufacture, marketing, advertising or service of any [competing product, process, or service in the United States, or (b) the solicitation of any person or organization I, or someone I supervised, called upon during the last three years of my employment by 3M in connection with the sale, lease or license of any [competing product or service].

*Id.* at F.2.

21. Former Employees in non-sales roles must not "render services directly or indirectly" to competing companies. But 3M employees in non-sales roles may accept employment with large, diversified competitors with distinct divisions provided 3M receives "written assurances satisfactory to 3M" that they will not "render services directly or indirectly" in connection with competing products, systems, or services. *Id.* at F.3.

22. Finally, each Former Employee agreed not to solicit current 3M employees:

> I agree that I will not personally, or by providing assistance to any other person or entity, directly or indirectly: (i) solicit, entice or encourage any individual employed by 3M to terminate or leave the employment of 3M, or (ii) offer to employ or retain—as an employee, independent contractor, consultant, agent or in any other capacity—any individual employed by 3M.

*Id.* at F.9.

23. CDT knows full well the terms of 3M's employment contracts with its Former Employees.

24. Despite knowing those terms, as set forth below, CDT intentionally and repeatedly procured breaches of the Former Employees' Employee Agreements, including—on information and belief—inducing the Former Employees to (a) solicit current 3M employees, (b) use 3M confidential information for the benefit of CDT, and (c) violate the post-employment restrictions

6

in their Employee Agreements such as servicing or calling upon the same accounts they worked for while employed by 3M.

    **D.**    **CDT Solicits 3M Employees**

25.    In January 2021, Jim McGinnis, a longtime 3M employee, received a solicitation from a recruiter on LinkedIn. A screenshot of the solicitation is below:



26.    Other 3M employees at 3M PG&F have received similar solicitations.

27.    The "superabrasives company" with a "Corp office in IN" describes only one company: CDT. On information and belief, the recruiter who made these solicitations was, in fact, working as an agent of CDT and the solicitations of 3M employees were, in fact, authorized and approved by CDT.

28.    On February 10, a longtime 3M PG&F employee in Mexico, stated that "I was invited to CDT facilities to discuss a job position for Mexico, so now I have to analyze and take the best decision."

E. **CDT Solicits Former 3M Employees Timothy Keene and Donald Cutchall**

29. In February and March 2021, two employees terminated by 3M—Timothy Keene and Donald Cutchall—requested permission from 3M to join CDT. Given the terminations, 3M allowed the employees to join CDT on the express condition that "you honor the confidentiality commitment by keeping all 3M information – including customers, processes, technology, product specs, etc., confidential."

30. Mr. Keene and Mr. Cutchall did the opposite. On his way out the door, Mr. Cutchall forwarded approximately sixty-four emails containing highly sensitive information to his personal email account. Mr. Keene likewise sent highly sensitive competitive information to his personal email account.

31. At great effort and expense, 3M ultimately was able to secure declarations from Mr. Keene and Mr. Cutchall promising that they destroyed any 3M confidential information they possessed. Mr. Cutchall ultimately declined CDT's employment offer because he did not wish to move to Mexico.

32. Among Mr. Keene's areas of focus when he was at 3M was Mexico. Mr. Keene's new job at CDT is "Mexico Business Development Manager/ Global Strategic Marketing." His job description directly overlaps with his former job responsibilities at 3M, inducing a breach of Mr. Keene's Employee Agreement and the conditions 3M provided in allowing Mr. Keene to work for CDT.

33. On March 23, 2021, CDT announced that Vianney Flores and Ricardo Retes, both recent employees of 3M Mexico, had also joined CDT.



### F. Paul Christy

34. Paul Christy was a longtime 3M PG&F employee at 3M's Royersford facility. Mr. Christy has specialized expertise in spindles, which are used in the superabrasive industry for sharpening or correcting the profile of grinding wheels.

35. In late March 2021, Christy announced to Peter Eisenberg, 3M's Sales Director for PG&F, that he was leaving 3M for CDT. Christy requested a waiver from the non-compete in his 3M Employee Agreement.

36. Eisenberg told Mr. Christy that 3M holds its intellectual property very close to the vest and he would need to be very careful with that information, especially customers and specifications. Mr. Eisenberg told Mr. Christy that 3M may choose to exercise its contractual right not to permit him to join CDT. But neither Mr. Christy nor CDT waited for an answer.

9

37. On April 16, 2021, Mr. Christy began employment at CDT in direct contravention of Mr. Christy's Employee Agreement with 3M.

38. When 3M's counsel demanded an explanation, CDT's counsel stated:

> As you know, CDT has routinely directed any 3M employee that sought out employment with CDT to inform 3M and receive permission from 3M to take the respective position at CDT. That is true for . . . Mr. Christy. **CDT has been provided documentation that confirms 3M has provided their consent for . . . Mr. Christy to commence [his] employment with CDT**. [Mr. Christy] commenced [his] employment on or about April 16, 2021.

(Emphasis Added.) This representation was false when made. 3M never consented to Mr. Christy's employment at CDT and provided Mr. Christy with no document reflecting such consent.[2]

39. Christy left 3M PG&F for CDT on April 6, 2021, without authorization from 3M, which is required by the 3M Employee Agreement because CDT directly competes with 3M. But in the months before he left, Christy sent a range of highly confidential 3M information to his personal Gmail account. Moreover, in the months since he's been at CDT, he has solicited business from his former accounts at 3M, including business related to spindles.

    1. **Christy Sends Reams of Highly Confidential Information to His Gmail Account Before Departing 3M for CDT.**

40. On February 6, 2021, Christy sent highly confidential testing information on 3M grinding wheels to his Gmail account. The subject line was "personal stuff." By emailing the testing information to his personal email account, Christy breached 3M's security policies. He also ensured that the information was outside the 3M system and in his control. It would not be the last time Christy would sneak confidential 3M information out of 3M's systems in the months running up to his departure for CDT.

---

[2] CDT's counsel ultimately acknowledged, at least tacitly, that no such documentation exists.

41. That same day, Christy emailed his Gmail account more 3M confidential information. For the subject line, he wrote misleadingly "grinding articles from web."

42. On February 15, 2021, Christy emailed the highly sensitive technical drawings 3M uses to create diamond rolls. In the email, he asks whether the drawings are current. "Just want to make sure from a quality standpoint nothing has changed . . . ." While sending the technical drawings, Christy blind copied his Gmail address, thus secretly removing the technical drawings from 3M's system and placing them under his personal control.

43. As 3M Global Security would later find, in the months leading up to his departure for CDT, Christy emailed highly sensitive 3M confidential information to his Gmail account *twenty* times. Those emails contained highly sensitive competitive information including PDFs, PowerPoint slides, and Excel spreadsheets.

44. When confronted by 3M Global Security, Christy ultimately signed a document acknowledging that he had destroyed the confidential material he had taken.

    **2.**    **Christy Makes Sales Calls on Accounts He Serviced While at 3M.**

45. By June 2021, Christy was back calling on his old 3M sales accounts in direct breach of his noncompete with 3M. In an email accidently sent to Christy's 3M email address after he had departed the company, Ryan Webb of Vallen, a 3M distributor, emailed Christy on June 4 to confirm a "CDT Wheel Trial Run for Weldon." Both Vallen and Weldon are 3M customers that Christy worked with in a sales capacity while at 3M.

46. Likewise, on June 22, 2021, Christy was at Volvo, another of his former 3M accounts. During that sales visit on behalf of CDT, Christy directly competed against 3M, asking whether Volvo was happy with 3M spindles.

47.     3M treats its customer lists, the products its customers buy, and its price lists as confidential information.

### G.  Chad Wesner

48.     On June 8, 2021, Chad Wesner, then a 3M PG&F salesperson, submitted his resignation to join CDT. He informed Mr. Eisenberg, his supervisor: "I will be accepting a position with CDT, with duties of Technical Support for the sales team in Mexico and Canada. I will also be assisting the sales team at current CDT customers, outside the gear industry."

49.     At 3M, Mr. Wesner was one of Mr. Keene's closest associates. Mr. Wesner did not even request a waiver before declaring his intent to join CDT.

### III.    CDT Knew About 3M's Employee Agreements and Procured Breaches by the Former Employees Anyway.

50.     Before filing suit, 3M made exhaustive efforts to resolve this dispute short of litigation. In the process, CDT hired Mr. Christy and allowed him to start work without a waiver from 3M. CDT also made the false claim, as alleged above, that it had documentation from 3M allowing the employment. Finally, CDT's announced that Chad Wesner was joining CDT without receiving approval from 3M for doing so. Finally, 3M received multiple reports that Paul Christy was openly flouting his post-employment obligations under the Employee Agreement.

51.     From its prior litigation with 3M and otherwise, CDT is highly familiar with 3M's Employee Agreement.

52.     On information and belief, CDT has intentionally procured numerous breaches of the Employee Agreement by the Former Employees, including but not limited to: (1) receiving from the Former Employees 3M's confidential information; (2) encouraging the Former Employees to solicit or help to solicit current 3M employees to join CDT; (3) encouraging the Former Employees to call on or service the same customers that the Former Employees called on

or serviced at 3M; and (4) using 3M's confidential information in the performance of the Former Employee's current job duties at CDT.

### CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT

53. 3M realleges and incorporates by reference herein the foregoing allegations of the Complaint.

54. CDT knew or should have known about the 3M Employee Agreement between 3M and the Former Employees.

55. CDT has interfered with, and if not enjoined will continue to interfere with, the Former Employees' contractual obligations to 3M as set forth in the 3M Employee Agreement.

56. CDT intended to harm 3M by interfering with the Former Employees' contractual obligations to 3M.

57. On information and belief, CDT has intentionally procured the breach of these contractual obligations by recruiting and hiring the Former Employees who worked at 3M to (a) use 3M's confidential information for the benefit of CDT, (b) solicit their former 3M colleagues to join them at CDT, (c) develop, manufacture, market, or service competing products, or (d) call on their former sales accounts while with 3M.

58. CDT's interference is improper and without justification.

59. As a direct and proximate cause of CDT's tortious interference, 3M has been damaged in an amount to be determined at trial in excess of $75,000. In addition, 3M has suffered irreparable harm and will continue to suffer irreparable harm unless CDT's tortious interference is enjoined by this Court. 3M is entitled to an injunction to prevent CDT's tortious interference and threatened further tortious interference.

## PRAYER FOR RELIEF

**WHEREFORE**, 3M prays for judgment as follows:

1. An Order granting preliminary and permanent injunctive relief preventing CDT from engaging in the wrongful conduct described herein;

2. Awarding 3M damages for the tortious conduct described herein;

3. Awarding 3M such interest, reasonable attorneys' fees, and costs as is available under law; and

4. Awarding 3M such other, further, or different relief as the Court deems just and proper.

Dated: July 19, 2021                                  Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

/s/ Angela K. Hall
Angela Kelver Hall  (#26991-71)
Emanuel L. McMiller (#35649-71)
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
P: (317) 237-0300
F: (317) 237-1000
angela.hall@faegredrinker.com
manny.mcmiller@faegredrinker.com

Randall E. Kahnke (MN Atty. No. 202745), *Pro Hac Vice Application forthcoming*
John W. Ursu (MN Atty. No. 32257), *Pro Hac Vice Application forthcoming*
Erica Abshez Moran (MN Atty. No 0400606), *Pro Hac Vice Application forthcoming*
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, MN  55402-3901
P: (612) 766-7000
F: (612) 766-1600
randall.kahnke@faegredrinker.com
john.ursu@faegredrinker.com
erica.moran@faegredrinker.com
*Attorney for Plaintiffs 3M Company and 3M Innovative Properties Company*