

EXHIBIT 4



# Employee Agreement

Form 3289 (03/10)

(Please Print)

| Employee's Last Name | First Name | Middle Initial |
|---|---|---|
| WESNER | CHAD | E |

1. In this AGREEMENT the following definitions apply:

    A. **3M** means 3M Company, and any existing or future subsidiaries, owned or controlled, directly or indirectly, by said company.

    B. **CONFIDENTIAL INFORMATION** means information, including but not limited to trade secrets, which is not generally known and is proprietary to 3M including, by way of example and without limitation, information about processes, products, systems, services, research, development, know-how, designs, formulas, compilations, manufacturing, purchasing, accounting, engineering, marketing, merchandising, selling, leasing, servicing, finance and business systems and techniques. It also includes similar information of a third party who has entrusted such information to 3M. It shall be presumed that all such information which is disclosed to me or to which I obtain access during the period of my employment, whether originated by me or by others, and which I have reasonable basis to believe is Confidential Information or is treated by 3M as Confidential Information is Confidential Information regardless of whether the information is marked as confidential.

    C. **INVENTIONS** means discoveries, improvements and ideas (whether or not shown or described in writing or reduced to practice), mask works (topography of semiconductor chips) and works of authorship, whether or not patentable, copyrightable or registrable, (1) which relate directly to the business of 3M, or (2) which relate to 3M's actual or demonstrably anticipated research or development, or (3) which result from any work performed by me for 3M, or (4) for which equipment, supplies, facility or Confidential Information of 3M is used, or (5) which is developed on any 3M time.

    D. **CONFLICTING PRODUCT, PROCESS, SYSTEM OR SERVICE** means any product, process, system or service of any person or organization other than 3M, in existence or under development, which is the same as or similar to or competes with a product, process, system or service about which I acquire Confidential Information at any time during my employment with 3M or upon which I work (in either a sales or a non-sales capacity) during the last three years of my employment by 3M.

    E. **CONFLICTING ORGANIZATION** means any person or organization which is engaged in or about to become engaged in, research on or development, production, marketing, leasing, selling or servicing of a Conflicting Product, Process, System or Service.

2. I ACKNOWLEDGE THAT I HAVE HAD THE OPPORTUNITY TO REVIEW THIS AGREEMENT AND TO CONSULT WITH AN ATTORNEY OF MY CHOICE BEFORE ACCEPTING EMPLOYMENT WITH 3M AND I ENTER INTO THIS AGREEMENT OF MY OWN FREE WILL AND ACT.

3. I AM OR WILL BE EMPLOYED BY 3M IN A CAPACITY IN WHICH I MAY RECEIVE OR CONTRIBUTE TO CONFIDENTIAL INFORMATION. IN CONSIDERATION OF SUCH EMPLOYMENT, AND THE WAGES OR SALARY AND OTHER EMPLOYEE BENEFITS IN COMPENSATION FOR MY SERVICES, AND IN CONSIDERATION OF BEING GIVEN ACCESS TO CONFIDENTIAL INFORMATION, I AGREE THAT:

    A. With respect to Inventions made, authored or conceived by me, either solely or jointly with others, (1) during my employment, whether or not during normal working hours or whether or not at 3M's premises, or (2) within one year after termination of my employment, I will:

    1. Keep accurate, complete and timely records of such Inventions, which records shall be 3M property and be retained on 3M's premises.

    2. Promptly and fully disclose and describe such Inventions to writing to 3M.

    3. Assign (and I do hereby assign) to 3M Company or its designee all of my rights to such Inventions, and to applications for letters patent, copyright registrations and/or mask work registrations granted upon such Inventions in all countries and acknowledge and deliver promptly to 3M Company or its designee (without charge to but at the expense of 3M Company or its designee) such written instruments and to do such other acts as may be necessary in the opinion of 3M Company or its designee to preserve property rights against forfeiture, abandonment or loss and to obtain, defend and maintain letters patent, copyright registrations and/or mask work registrations and to vest the entire right and title thereto in 3M Company or its designee.

**NOTICE:** This is to notify you that paragraph 3(A) of this 3M "Employee Agreement" which you are being asked to sign as a condition of your employment does not apply to an invention for which no equipment, supplies, facility or trade secret information of 3M was used and which was

developed entirely on your own time, and (1) which does not relate (a) directly to the business of 3M or (b) to 3M's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by you for 3M.

- B. I understand and agree that my employment creates a relationship of confidence and trust between me and 3M with respect to Confidential Information. Except as required in my duties to 3M, I will never, either during my employment by 3M, or thereafter for so long as applicable law provides, use or disclose any Confidential Information as defined in paragraph 1(B) above. During my employment by 3M, I will not own, operate or render services directly or indirectly as an employee or consultant/advisor to a Conflicting Organization.

- C. I represent and warrant that my employment by 3M will not conflict with and will not be constrained by any prior employment or consulting agreement or relationship. I represent and warrant that I will not bring any documents or things to 3M from my previous employment which contain confidential information. I am hereby advised that 3M does not desire to receive any confidential information in breach of my obligation to others and, I agree that as a 3M employe I will not disclose to 3M or use in the performance of my duties for 3M any confidential information in breach of my obligation to any third party. However, during my employment by 3M I will in the performance of my duties use all information which is generally known and used by persons with training and experience comparable to my own and all information which is common knowledge in the industry or otherwise legally in the public domain.

- D. UPON termination of my employment with 3M, all documents, records and any compositions, articles, devices, computer software, computer diskettes and other storage media, and any other items which disclose or embody Confidential Information including all copies or specimens thereof in my possession (whether at my place of work, at home or elsewhere), that have been prepared or made by me or others, will be left with or immediately returned to 3M.

- E. EXCEPT as listed at the end of this Agreement, I will not assert any rights under any Inventions as having been made, conceived, authored or acquired by me prior to my being employed by 3M.

- F. FOR a period of two years after termination of my employment with 3M for any reason:

   1. I will inform any new employer, prior to accepting employment, of the existence of this Employee Agreement and provide such employer with a copy thereof.

   2. If I have been or am employed by 3M in a sales capacity, I will not render services directly or indirectly to any Conflicting Organization involving: (a) the development, manufacture, marketing, advertising or servicing of any Conflicting Product, Process, System or Service in the United States, or (b) the solicitation of any person or organization I, or someone I supervised, called upon during the last three years of my employment by 3M in connection with the sale, lease or license of any Conflicting Product, Process, System or Service.

   3. If I have been or am employed by 3M in a non-sales capacity, I will not render services directly or indirectly to any Conflicting Organization in the United States or in any country in which 3M manufactures or produces a product upon which I work during my employment with 3M or in which 3M provides a service in which I participate during my employment by 3M, except that I may accept employment with a large Conflicting Organization whose business is diversified (and which has separate and distinct divisions), provided 3M, prior to my accepting such employment, shall receive separate written assurances satisfactory to 3M from such Conflicting Organization and from me, that I will not render services directly or indirectly in connection with any Conflicting Product, Process, System or Service.

   4. If I intend to accept or do accept an offer of employment from a person or organization that I should have reason to believe may be a Conflicting Organization within the meaning of paragraph 1(E) of this Agreement and that may cause me to render services to the Conflicting Organization within the two-year period provided for in paragraph 3(F), I will immediately disclose to 3M the name and location of the employer and the time I will begin to render such services. Such notice shall be in writing and mailed to the address set forth in paragraph 9 of this Agreement.

   5. I understand and agree that if I render services to a Conflicting Organization in violation of paragraph 3(F) of this Agreement and I have not given notice to 3M as provided for in paragraph 3(F)(4), and if 3M discovers my violation within the two-year period provided for in paragraph 3(F), then the running of the two-year period will be tolled and suspended from the beginning of my violation until the time 3M discovers my violation, provided 3M takes prompt action after such discovery to seek injunctive relief to enforce paragraph 3(F).

   6. If I am denied or forced to turn down employment consistent with my abilities and education solely because of provisions of paragraph 3(F)(2) or (3), I will immediately give 3M the name of the person or organization whose employment I was denied or forced to turn down and the related circumstances. The provisions of paragraph 3(F)(2) and (3) shall thereafter continue to bind me only as long as 3M shall make payments to me equal to my monthly base pay at termination for each month of unemployment, as provided for below, unless 3M gives me written permission to accept available employment or gives me a written release of my obligations under paragraphs 3(F)(2) and (3). Such monthly base pay shall be exclusive of extra compensation, bonus or employee benefits, and the following shall be deducted from it in determining the amount to be paid to me:

      (a) Any compensation I earned during such month from a source other than 3M in exchange for any services I performed, regardless of whether such compensation has actually been paid during such month;

(b) Any retirement payment I actually received from 3M for such month; and

(c) One twenty-fourth (1/24) of any total severance payment I actually received from 3M.

7. I agree that during each month after I have been denied or forced to turn down employment consistent with my abilities and education solely because of the provisions of this paragraph 3(F), I will make conscientious and aggressive efforts to find employment; and I will, within ten days after the end of each calendar month, give 3M a detailed written account of my efforts to obtain employment. Such account will include the names of the prospective employers I contacted, the name of each contact person I talked to, that person's phone number, the date I made the contact, and the compensation I received during such month for any services I did perform. Such account shall further include a statement that although I aggressively sought employment, I was unable to obtain employment solely because of the provision of this paragraph 3(F). I understand that 3M shall be relieved of making a monthly payment to me for any month during which I fail to seek employment conscientiously and aggressively and to account to 3M as provided for above. If 3M is so relieved from making a monthly payment, I understand that I am still subject to the obligations of paragraph 3(F) and this Agreement.

8. Under no circumstances will 3M make such monthly payments to me after the expiration of the two-year period (unless paragraph 3(F) has been tolled or suspended pursuant to paragraph 3(F)(5)), or after my death.

9. I agree that I will not personally, or by providing assistance to any other person or entity, directly or indirectly: (i) solicit, entice or encourage any individual employed by 3M to terminate or leave the employment of 3M, or (ii) offer to employ or retain-as an employee, independent contractor, consultant, agent or in any other capacity-any individual employed by 3M.

4. I understand that if there is a breach by me of this Agreement, 3M may sustain irreparable injury and may not have an adequate remedy at law. As a result, I agree that in the event of my breach of this Agreement 3M may, in addition to any other remedies available to it, bring an action or actions for injunction, specific performance or both, and have entered a temporary restraining order, preliminary or permanent injunction, or order compelling specific performance.

5. **ALL MY** obligations under paragraphs 3(A) through 3(E) of this Agreement shall be binding upon my heirs, spouses, assigns, and legal representatives.

6. If any provision of this Agreement shall contravene Minnesota law or any other law that is applied to the construction and interpretation of this Agreement, then this Agreement shall be construed as if such provision is not contained herein insofar as enforcement of this Agreement against me in such particular state is concerned.

7. **THIS AGREEMENT** replaces any existing Agreement entered into by me and 3M relating generally to the same subject matter, but such replacement shall not affect rights and obligations of either party arising out of any such prior Agreement which shall then continue to be in effect for that purpose. I understand that nothing in this Agreement changes the at-will nature of my employment relationship with 3M.

8. All notices to be sent to 3M shall be addressed as follows: Employee Agreement Administrator, 3M Innovative Properties Company, Office of Intellectual Property Counsel, 3M Center, P.O. Box 33427, St. Paul, MN 55133-3427.

(On a separate attached sheet pursuant to paragraph 3(E) above, give a brief description of the product or process, etc., plus a list of source documents, such as patents, patent applications, drawings, or written descriptions, identified by number, title and date. Do not disclose or describe here anything you regard as being confidential.)

Signed at __DEARBORN__ __MI__ this __4TH__ day of __DECEMBER__, 20 __11__
           City         State

Accepted for 3M at St. Paul, Minnesota:

Employee's Signature: [signature]
Home Address: 7008 COLONIAL
City: DEARBORN HEIGHTS   State: MI   Zip: 48127
3M Person ID: 01351898   Social security Number:

Signature: [signature]
Title: Vice President, Compensation and Benefits