IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| 3M Company and<br>3M Innovative Properties Company,<br><br>   Plaintiffs,<br><br>   v.<br><br>Continental Diamond Tool Corp<br>an Indiana corporation,<br><br>   Defendants. | CASE NO.: 1:21-CV-274 |

**PLAINTIFFS' ANSWER TO DEFENDANT'S COUNTERCLAIM**

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively, "3M"), for their Answer and Defenses to Defendant Continental Diamond Tool Corp ("CDT's") Counterclaim, state and allege as follows:

**COUNTERCLAIM**

1.   Upon information and belief, Plaintiffs, referred to collectively as 3M, are corporations organized under the laws of the State of Delaware, having their principal place of business at 3M Center, St. Paul, Minnesota 55144.

**ANSWER**: 3M admits that 3M Company is a corporation organized under the laws of the State of Delaware, having its principal place of business at 3M Center, St. Paul, Minnesota 55144, and that 3M Innovative Properties Company ("3M IPC") is a wholly owned subsidiary of 3M Company with its principal place of business at 3M Center, St. Paul, Minnesota 55144. 3M denies all remaining allegations in Paragraph 1 of the Counterclaim.

2.   Continental Diamond Tool Corp. ("CDT") is an Indiana corporation with its principal place of business in New Haven, Indiana.

**ANSWER**: 3M admits the allegations in Paragraph 2 of the Counterclaim.

3. 3M and CDT both do business in the superabrasives industry.

**ANSWER**: 3M admits that Continental Diamond Tool is a direct competitor of 3M in the super-abrasives industry.

4. Over the last several years, several employees have left the employment of 3M or its affiliates and subsequently became employed by CDT.

**ANSWER**: Admitted that since 2019, CDT has hired around or about eight former 3M employees. 3M denies all remaining allegations in Paragraph 4 of the Counterclaim.

5. At least some of the former employees of 3M or its affiliates had an agreement with 3M regarding their employment at 3M's affiliates.

**ANSWER**: The allegations of Paragraph 5 are overly broad, compound, vague, and unintelligible, and therefore, 3M denies the allegations in Paragraph 5 of the Counterclaim. Moreover, 3M denies CDT's characterization of unnamed written agreements, the contents of which speak for themselves.

6. Paul Christy ("Christy") was a former employee of an affiliate of 3M who inquired about employment with CDT in 2021 and who was ultimately hired by CDT.

**ANSWER**: 3M denies that Paul Christy was an employee of an affiliate of 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6 regarding Christy reaching out to CDT in 2021, and therefore denies these allegations. 3M admits that Christy is now employed by CDT.

7. CDT directed Christy to request a release from his 3M non-compete prior to commencing his employment with CDT.

**ANSWER**: 3M lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7, and therefore denies these allegations.

8. Christy had a written agreement with 3M that provided that he could work for CDT if he obtained the consent of 3M (the "Christy Agreement"). A true and accurate copy of the Christy Agreement is attached hereto, incorporated herein, and marked Exhibit "1."

**ANSWER**: 3M admits that Exhibit 1 is a true and accurate copy of Christy's Employee Agreement with 3M, but denies any characterization of the Christy 3M Employee Agreement by CDT, the contents of which speak for themselves.

9. On or about March 22, 2021, Christy asked for consent from 3M and was told by 3M that he would be contacted by Human Resources the week of April 9, 2021. However, 3M never contacted Christy.

**ANSWER**: 3M admits that in late March 2021, Christy announced that he was leaving 3M for CDT, and asked 3M for a waiver, which 3M did not provide. 3M denies all remaining allegations in Paragraph 9 of the Counterclaim.

10. Christy waited the 14 days for a response to his request to work for CDT and no response was given and Christy then waited until April 16, 2021, with no response, before starting work for CDT.

**ANSWER**: 3M admits that Christy is now employed by CDT, and denies all remaining allegations in Paragraph 10 of the Counterclaim.

11. 3M is not permitted to frustrate the purposes of the Christy Agreement by simply not responding to Christy.

**ANSWER**: 3M denies CDT's characterization of the Christy 3M Employee Agreement, the contents of which speak for themselves, and also denies that it frustrated the purposes of the

Christy 3M Employee Agreement. 3M denies the remaining allegations in Paragraph 11 of the Counterclaim.

12. Christy waited a reasonable time for a response from 3M and because 3M failed to respond within a reasonable time, 3M is deemed to have given consent.

**ANSWER**: 3M denies the allegations in Paragraph 12 of the Counterclaim.

13. Christy fully complied with his agreement with 3M.

**ANSWER**: 3M denies the allegations in Paragraph 13 of the Counterclaim.

14. On June 1, 2021, counsel for 3M sent a letter to Christy claiming that 3M never granted permission and belatedly attempting to object to Christy's employment. A true and accurate copy of the June 1, 2021 correspondence is attached hereto, incorporated herein, and marked Exhibit "2."

**ANSWER**: 3M admits that Exhibit 2 is a true and accurate copy of a June 1, 2021 letter from 3M counsel to Christy. 3M denies any characterization of the June 1, 2021 letter by CDT, the contents of which speak for themselves.

15. On July 30, 2021, Christy received another letter from 3M again claiming that Christy did not receive consent and instructing Christy to turn down his employment after 3M had failed to object to Christy's employment within a reasonable time. A true and accurate copy of the July 30, 2021 correspondence is attached hereto, incorporated herein, and marked Exhibit "3".

**ANSWER**: 3M admits that Exhibit 3 is a true and accurate copy of a June 30, 2021 letter from 3M's Human Resources Manager to Christy. 3M denies any characterization of the June 30, 2021 letter by CDT, the contents of which speak for themselves.

16. The Christy Agreement does not provide for the retroactive withdrawal of consent.

**ANSWER**: 3M denies CDT's characterization of the Christy 3M Employee Agreement, the contents of which speak for themselves, and further denies that 3M consented to Christy working for CDT.

17. Chad Wesner ("Wesner'") was also an employee of an affiliate of 3M who considered joining CDT.

**ANSWER**: 3M denies that Chad Wesner was an employee of an affiliate of 3M. 3M admits that on June 8, 2021, Wesner submitted his resignation to join CDT. He informed his supervisor at 3M: "I will be accepting a position with CDT, with duties of Technical Support for the sales team in Mexico and Canada. I will also be assisting the sales team at current CDT customers, outside the gear industry."

18. Wesner also had an agreement with 3M (the "Wesner Agreement"). A true and accurate copy of the Wesner Agreement is attached hereto, incorporated herein, and marked Exhibit "4."

**ANSWER**: 3M admits that Exhibit 4 is a true and accurate copy of Wesner's Employee Agreement with 3M, and denies any characterization of the Wesner 3M Employee Agreement by CDT, the contents of which speak for themselves.

19. 3M failed to pay Wesner in direct violation of the Wesner Agreement.

**ANSWER**: 3M denies the allegations in Paragraph 19 of the Counterclaim.

20. 3M, by counsel, sent a letter to Wesner on August 2, 2021 attempting to restore 3M's rights after 3M had breached the Wesner Agreement. A true and accurate copy of the August 2, 2021 correspondence is attached hereto, incorporated herein, and marked Exhibit "5."

**ANSWER**: 3M admits that Exhibit 5 is a true and accurate copy of an August 2, 2021 letter from 3M counsel to Wesner. 3M denies any characterization of the August 2, 2021 letter by CDT, the contents of which speak for themselves.

21. 3M is now asserting that Wesner cannot work at CDT even though 3M did not comply with the Wesner Agreement and was the first party to breach the Wesner Agreement.

**ANSWER**: 3M denies that it failed to comply with the Wesner 3M Employee Agreement, and that it breached the Wesner 3M Employee Agreements. 3M further denies CDT's characterization of the August 2, 2021 letter, the contents of which speak for themselves. 3M admits that it has not consented to Wesner's employment with CDT. 3M denies all remaining allegations in Paragraph 21 of the Counterclaim.

22. 3M's behavior, in contravention of its own agreements, is wholly without justification.

**ANSWER**: 3M denies the allegations in Paragraph 22 of the Counterclaim.

## CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

23. CDT realleges and incorporates by reference herein the foregoing allegations of the Complaint.

**ANSWER**: 3M incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

24. 3M knew or should have known that CDT has business relationships with Christy and Wesner.

**ANSWER**: 3M denies the allegations in Paragraph 24 of the Counterclaim.

25. 3M has interfered with, and if not enjoined will continue to interfere with, the business relationships between CDT, Christy, and Wesner.

**ANSWER**: 3M denies the allegations in Paragraph 25 of the Counterclaim.

26. 3M intends to harm CDT by interfering with CDT's business relationships.

**ANSWER**: 3M denies the allegations in Paragraph 26 of the Counterclaim.

27. On information and belief, 3M has intentionally interfered with these business relationships by failing to respond to Christy within a reasonable period of time and by breaching its own agreements but still insisting upon performance form Christy and Wesner.

**ANSWER**: 3M denies the allegations in Paragraph 27 of the Counterclaim.

28. As a direct and proximate cause of 3M's tortious interference, CDT has been damaged. In addition, CDT has suffered irreparable harm and will continue to suffer irreparable harm unless 3M's tortious interference is enjoined by this Court. CDT is entitled to injunctive relief to prevent 3M's tortious interference and threatened further tortious interference.

**ANSWER**: 3M denies the allegations in Paragraph 28 of the Counterclaim.

## DECLARATORY RELIEF

29. CDT realleges and incorporates by reference herein the foregoing allegations of the Complaint.

**ANSWER**: 3M incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

30. The Christy Agreement and Wesner Agreement define 3M, for purposes of limiting the post-employment activities of Christy and Wesner, as "3M Company and any existing or future subsidiaries, owned or controlled, directly or indirectly, by said Company."

**ANSWER**: Admitted only that 3M is defined in both the Christy and Wesner 3M Employee Agreements as "3M Company and any existing or future subsidiaries, owned or controlled, directly or indirectly, by said Company." 3M denies any characterization of these agreements by CDT, the contents of which speak for themselves. 3M denies all remaining allegations in Paragraph 30 of the Counterclaim.

31. Christy and Wesner did not work for 3M Company but were employed by affiliates.

**ANSWER**: 3M denies the allegations in Paragraph 31 of the Counterclaim.

32. The application of the post-employment obligations to 3M – a company for whom Christy and Wesner were not employed – and "future subsidiaries" which did not exist and could not be determined at the time the Agreements were executed – is overbroad and unenforceable.

**ANSWER**: 3M denies the allegations in Paragraph 32 of the Counterclaim.

33. The Christy Agreement and Wesner Agreement are unenforceable and CDT cannot interfere with an unenforceable contract.

**ANSWER**: 3M denies the allegations in Paragraph 33 of the Counterclaim.

**AFFIRMATIVE DEFENSES**

1. CDT's claims are barred, in whole or in part, because the Counterclaim fails to state a claim upon which relief can be granted.

2. CDT's claims are barred, in whole or in part, by the doctrine of unclean hands.

3. CDT's claims are barred, in whole or in part, by the doctrine of estoppel.

4. CDT's claims are barred, in whole or in part, because, at all times, 3M acted in good faith and for the purpose of protecting its own interests.

5.  If CDT has suffered any damages, which 3M denies, CDT has failed to mitigate its damages.

6.  CDT's Counterclaim is frivolous and was brought in bad faith, entitling 3M to attorney's fees and costs. Specifically, CDT's Counterclaim is retaliatory in nature and was designed to punish 3M for the claims 3M asserted in the Complaint against CDT. 3M is thus entitled to to attorney's fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

7.  3M reserves the right to assert any other affirmative defenses made relevant by facts, circumstances, or other legal theories.

WHEREFORE, 3M prays that CDT take nothing by way of its Counterclaim and that CDT is awarded the costs and fees in defending the Counterclaim.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: September 7, 2021 | **FAEGRE DRINKER BIDDLE & REATH LLP** |
|  | */s/ Angela Kelver Hall* |
|  | Angela Kelver Hall (#26991-71) |
|  | Emanuel L. McMiller (#35649-71) |
|  | 300 N. Meridian St., Suite 2500 |
|  | Indianapolis, IN 46204 |
|  | P: (317) 237-0300 |
|  | F: (317) 237-1000 |
|  | angela.hall@faegredrinker.com |
|  | manny.mcmiller@faegredrinker.com |
|  | Randall E. Kahnke (MN Atty. No. 202745), *Pro Hac Vice Application forthcoming* |
|  | John W. Ursu (MN Atty. No. 32257), *Pro Hac Vice Application forthcoming* |
|  | Erica Abshez Moran (MN Atty. No 0400606), *Pro Hac Vice Application forthcoming* |
|  | 2200 Wells Fargo Center |
|  | 90 South Seventh Street |

Minneapolis, MN  55402-3901
P: (612) 766-7000
F: (612) 766-1600
randall.kahnke@faegredrinker.com
john.ursu@faegredrinker.com
erica.moran@faegredrinker.com