**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| 3M Company, a Delaware corporation, | ) | |
| and 3M Innovative Properties Company, | ) | |
| a Delaware corporation | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO.: 1:21-cv-274 |
| | ) | |
| v. | ) | |
| | ) | |
| Continental Diamond Tool Corp. | ) | |
| an Indiana corporation, Paul Christy, | ) | |
| an individual, Timothy Keene, | ) | |
| an individual, and Chad Wesner, | ) | |
| an individual | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>AMENDED COMPLAINT</u>

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively, "3M"), for their Amended Complaint against Defendants Continental Diamond Tool Corp ("CDT"), Paul Christy, Timothy Keene, and Chad Wesner, allege as follows:

## <u>INTRODUCTION</u>

1.      3M is a global leader in advanced abrasive technologies. Its abrasive technologies have helped improve productivity and cut costs for customers in virtually every industrial sector—automotive, aerospace, oil and gas, cutting tool, primary metal, glass, and more.

2.      CDT is a direct competitor of 3M in the superabrasives industry. On information and belief, CDT has no relevant business interests that are different than 3M business interests.

3.      CDT has a pattern and practice of inducing breaches of 3M's Employee Agreement to gain an unfair advantage over 3M.

4.     On or about September 17, 2018, 3M filed suit against CDT and former 3M employee Walter P. Baumbach ("the Baumbach Action"). The lawsuit alleged that CDT raided 3M employees for improper competitive gain and induced Mr. Baumbach to use or disclose 3M's confidential information and trade secrets

5.     In March 2019, CDT settled that lawsuit with 3M, specifically its 3M's Precision Grinding & Finishing ("3M PG&F") business. Since settling that lawsuit,[1] CDT has hired approximately eight former 3M employees.

6.     CDT has repeatedly assured 3M that it is respecting the terms of 3M's contracts with its former employees. CDT has repeatedly claimed that it is not using 3M's confidential information. CDT has repeatedly claimed that it is respecting the post-termination employment restrictions in 3M's contracts with its former employees. On information and belief, those assurances were false. In addition, Paul Christy, Timothy Keene, and Chad Wesner have breached their agreements with 3M.

7.     3M brings this action to make CDT, Paul Christy, Timothy Keene, and Chad Wesner stop their unlawful conduct. CDT has intentionally procured a breach—and likely many breaches—of 3M's contracts with its former employees. In addition, Paul Christy, Timothy Keene, and Chad Wesner have breached their agreements with 3M. 3M therefore seeks equitable relief in the form of a preliminary injunction and damages.

---

[1] 3M does not assert—and affirmatively disclaims—claims or causes of action against CDT to the extent they arose before the settlement was reached and the prior claims dismissed with prejudice. 3M only asserts claims or causes or action based on conduct that postdates the resolution of the prior matter and any associated releases.

## PARTIES

8.      Plaintiff 3M Company is a corporation organized under the laws of the State of Delaware, having its principal place of business at 3M Center, St. Paul, Minnesota 55144.  It is a citizen of both Delaware and Minnesota.

9.      Plaintiff 3M Innovative Properties Company is a wholly owned subsidiary of 3M Company with its principal place of business at 3M Center, St. Paul, Minnesota 55144.  It is a citizen of both Delaware and Minnesota.

10.     Defendant CDT is an Indiana corporation with its principal place of business in New Haven, Indiana.  It is a citizen of Indiana.

11.     Defendant Paul Christy is an individual employed by Defendant CDT. Defendant Christy, lives in Schwenksville, Pennsylvania.  Christy is a citizen of Pennsylvania.

12.     Defendant Timothy Keene is an individual employed by Defendant CDT. Defendant Keene, lives in Malvern, Pennsylvania.  Keene is a citizen of Pennsylvania.

13.     Defendant Chad Wesner is an individual employed by Defendant CDT. Defendant Wesner, lives in Naples, Florida.  Wesner is a citizen of Florida.

## JURISDICTION & VENUE

14.     This Court has original subject-matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the claims are between citizens of different states. This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because 3M's allegations arise under 18 U.S.C. § 1836(b), which provides for a right of civil action for theft of trade secrets. The Court also has supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

15.     Christy, Wesner, and Keene have consented to — and thereby waived any challenge to — the Northern District of Indiana's exercise of personal jurisdiction over them in connection with this dispute.

16.     Venue is appropriate under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this dispute occurred within this district, and because CDT and its employees are subject to the Court's personal jurisdiction here.


## FACTS

### I.     3M Is a Global Leader in the Superabrasives Industry.

17.     3M is a leader in the superabrasives industry, with a worldwide presence and strong reputation for quality products and expertise. For over a century, from its earliest beginnings, 3M has developed and marketed innovative abrasive technology.

18.     3M has devoted substantial resources over its long history to developing and innovating its superabrasives product lines, which include, among others, vitrified CBN and metal-bonded abrasives. 3M has expended a considerable amount of time and effort and large sums of money to develop confidential information about the methods, equipment, and processes, among other things, used in its superabrasive product lines and to educate its employees on the same.

19.     3M has also developed and employed extensive measures to protect the confidential nature of information about the processes and products it has developed. Among other measures in place at the 3M PG&F facilities, 3M locks doors, uses secure-entry key fobs, has security cameras, and requires visitors to register and be escorted while on the premises. 3M also protects its confidential data and information by using secure network drives and encrypted files, and by conducting regular employee training and certification. 3M also requires employees with access

to its confidential information to sign 3M employee agreements and sets forth confidentiality expectations specific to trade secrets and product security in its employee manual.

## II.  CDT Recruits and Hires 3M's Technical and Sales Personnel.

20.     On information and belief, CDT has recruited and hired 3M's technical and sales personnel, current and former, in order to unlawfully capitalize on the goodwill, specialized knowledge, and know-how of 3M's employees.

21.     Indeed, as set forth below, CDT began secretly working with at least one 3M employee, Tim Keene, while he was still at 3M to create—in CDT's own words—a "Dream Team" made of the "valuable people and resources [3M] ha[s]" to allow CDT to make "a hell of a run."

### A.     3M's Employee Agreement.

22.     Excluding Walt Baumbach, CDT currently has approximately eight former 3M employees currently working for it: Troy Giacherio, Ian Bennett, Vianney Flores, Ben Fisher, Ricardo Reyes, Tim Keene, Paul Christy, and Chad Wesner ("Former Employees").

23.     Each of the Former Employees—as consideration for their employment by 3M—agreed to be bound by 3M's employee agreement ("the Employee Agreement"). Among other things, after employment with 3M ends, the Employee Agreement requires the Former Employees to keep 3M's confidences. *See* 3M Employee Agreement, attached as **Exhibit A** hereto.

24.     The Employee Agreement defines Confidential Information to mean "information, including but not limited to trade secrets, which is not generally known and is proprietary to 3M including, by way of example and without limitation, information about processes, products, systems, services, research, development, know-how, designs, formulas, compilations, manufacturing purchasing, accounting, engineering, marketing, merchandising, selling, leasing, servicing, finance and business systems and techniques. . . . It shall be presumed that all such

information which is disclosed to me or to which I obtain access during the period of my employment, whether originated by me or by others, and which I have reasonable basis to believe is Confidential Information or is treated by 3M as Confidential Information is Confidential Information regardless of whether the information is marked as confidential." *Id.* at ¶ B.

25.     The Former Employees agreed not to use or disclose Confidential Information and, upon termination, to return any Confidential Information the Former Employee possessed to 3M. As set forth in Section 3 of the Employee Agreement:

> **I AM OR WILL BE EMPLOYED BY 3M IN A CAPACITY IN WHICH I MAY RECEIVE OR CONTRIBUTE TO CONFIDENTIAL INFORMATION. IN CONSIDERATION OF SUCH EMPLOYMENT, AND THE WAGES OR SALARY AND OTHER EMPLOYEE BENEFITS IN COMPENSATION FOR MY SERVICES, AND IN CONSIDERATION OF BEING GIVEN ACCESS TO CONFIDENTIAL INFORMATION, I AGREE THAT:**
>
> > . . .
>
> > B.     I understand and agree that my employment creates a relationship of confidence and trust between me and 3M with respect to Confidential Information. . . . I will never, either during my employment by 3M, or thereafter for so long as applicable law provides, use or disclose any Confidential Information . . .
>
> > . . .
>
> > D.     UPON termination of my employment with 3M, all documents, records and any compositions, articles, devices, computer software, computer diskettes and other storage media, and any other items which disclose or embody Confidential Information including all copies or specimens thereof in my possession (whether at my place of work, at home or elsewhere), that have been prepared or made by me or others, will be left with or immediately returned to 3M.
>
> > . . .

*Id.*

26. In addition, the Employee Agreement requires that each of the Former Employees, for a period of two years, must not render services to competing companies without 3M's express permission. Even where such permission is granted, Former Employees must abide by certain restrictions. For those in sales roles:

> If I have been or am employed by 3M in a sales capacity, I will not render services directly or indirectly to any [competing company] involving: (a) the development, manufacture, marketing, advertising or service of any [competing product, process, or service in the United States, or (b) the solicitation of any person or organization I, or someone I supervised, called upon during the last three years of my employment by 3M in connection with the sale, lease or license of any [competing product or service].

*Id.* at F.2.

27. Former Employees in non-sales roles must not "render services directly or indirectly" to competing companies. But 3M employees in non-sales roles may accept employment with large, diversified competitors with distinct divisions provided 3M receives "written assurances satisfactory to 3M" that they will not "render services directly or indirectly" in connection with competing products, systems, or services. *Id.* at F.3.

28. Finally, each Former Employee agreed not to solicit current 3M employees:

> I agree that I will not personally, or by providing assistance to any other person or entity, directly or indirectly: (i) solicit, entice or encourage any individual employed by 3M to terminate or leave the employment of 3M, or (ii) offer to employ or retain—as an employee, independent contractor, consultant, agent or in any other capacity—any individual employed by 3M.

*Id.* at F.9.

29. CDT knows the terms of 3M's employment contracts with its Former Employees.

30. Despite knowing those terms, as set forth below, CDT intentionally and repeatedly procured breaches of the Former Employees' Employee Agreements, including—on information and belief—inducing the Former Employees to (a) solicit current 3M employees, (b) use 3M confidential information for the benefit of CDT, and (c) violate the post-employment restrictions

in their Employee Agreements such as servicing or calling upon the same accounts they worked for while employed by 3M.

**B.     CDT Solicits 3M Employees.**

31.     In January 2021, Jim McGinnis, a longtime 3M employee, received a solicitation from a recruiter on LinkedIn. A screenshot of the solicitation is below:



32.     Other 3M employees at 3M PG&F have received similar solicitations.

33.     The "superabrasives company" with a "Corp office in IN" describes only one company: CDT. On information and belief, the recruiter who made these solicitations was, in fact, working as an agent of CDT and the solicitations of 3M employees were, in fact, authorized and approved by CDT.

On February 10, a longtime 3M PG&F employee in Mexico, stated that "I was invited to CDT facilities to discuss a job position for Mexico, so now I have to analyze and take the best decision."

**C.      Timothy Keene Solicits 3M Employees for CDT while Employed at 3M.**

34.      Timothy Keene was a 3M employee from December 2011 until March 2021, when his job was eliminated as a result of restructuring.

35.      On February 21, 2021, Keene—who at that time was still employed by 3M—sent an email to Shane Vardaman, a CDT Sales Manager, using a pseudonym: "Max Packard." Keene was seeking a job at CDT, a 3M competitor.

36.      Keene urged CDT to consider hiring another current 3M employee, noting that "the potential team . . . would be a blockbuster." Keene also provided CDT with advice on how to thwart 3M's non-competition agreement, suggesting that "you assign his role as product development manager for conventional wheels" because "3M shut this business down along with [the current 3M employee's] role six months ago" and "[t]his is no longer part of his job description."

37.      Vardaman, on behalf of CDT, responded: "I almost deleted your email with the code name Max Packard." Vardaman continued: "I feel our business coexist very well along with the valuable people and resources you have, this could be the Dream Team on creating a hell of a run."

38.      In March 2021, Keene requested permission from 3M to join CDT. 3M, not knowing that Keene was already covertly soliciting 3M employees to build a "Dream Team" for CDT, allowed Keene to join CDT. 3M did so on the express condition that "you honor the confidentiality commitment by keeping all 3M information – including customers, processes, technology, product specs, etc., confidential."

39.      Keene did not do so. Rather, while still employed at 3M, Keene sent highly competitive information to his personal email account.

40.     At great effort and expense, 3M ultimately was able to secure a declaration from Keene promising that he destroyed any 3M confidential information he possessed.

41.     Keene began employment at CDT on April 15, 2021. The next day, CDT's counsel sent a letter to 3M's counsel stating:

> I note that CDT has a copy of Tim Keene's 3M agreement, and has reviewed it. It is CDT's intent to honor the restrictions within that agreement as it concerns solicitation of current 3M employees, and calling upon accounts that he is prohibited from under the terms of the 3M agreement for the time frame set forth in the 3M agreement.

CDT's counsel also passed along a job description for Tim Keene, which was designed to falsely convey the impression of compliance with the 3M Employee Agreement.

42.     As it would turn out, CDT had no intent to comply with the restrictions in the 3M Employee Agreement. Indeed, in the months after his hiring, Keene would call on a number of his former 3M sales accounts, including Kennametal Weldon, Pratt Whitney, SS White, and Tridex.

**D.     Paul Christy.**

43.     Paul Christy was a longtime 3M PG&F employee at 3M's Royersford facility. Christy has specialized expertise in spindles, which are used in the superabrasive industry for sharpening or correcting the profile of grinding wheels.

44.     In February 2021, Christy began helping CDT gain business while still employed by 3M.

45.     On February 17, 2021, Shane Vardaman, a CDT Sales Manager, forwarded an internal CDT email to Paul Christy's personal email account. Vardaman requested that Christy, then a current 3M employee, give a "nudge" to the 3M customer Timken "to give CDT a chance."

10

46.     Christy responded: "I shouldn't tell you this but I have the 3M quote [for Timkin] in my inbox and am waiting on permission to travel so I can plan my trip . . . ."  Christy continued giving CDT highly proprietary competitive information, stating "I also have a $10k spindle project on their new Landis Bryant machines were Landis wen with Dr Kaiser instead of us."

47.     A month later, Christy announced to Peter Eisenberg, 3M's Sales Director for 3M PG&F, that he was leaving 3M for CDT. Christy requested a waiver from the non-compete in his 3M Employee Agreement.   Christy did not disclose that he was already funneling confidential information to CDT.

48.     Eisenberg told Christy that 3M holds its intellectual property very close to the vest and he would need to be very careful with that information, especially customers and specifications.  Eisenberg told Christy that 3M may choose to exercise its contractual right not to permit him to join CDT. But neither Christy nor CDT waited for an answer.

49.     On April 16, 2021, Christy began employment at CDT in direct contravention of Christy's Employee Agreement with 3M.

50. When 3M's counsel demanded an explanation, CDT's counsel stated:

As you know, CDT has routinely directed any 3M employee that sought out employment with CDT to inform 3M and receive permission from 3M to take the respective position at CDT. That is true for . . . Christy. **CDT has been provided documentation that confirms 3M has provided their consent for . . . Christy to commence [his] employment with CDT**. [ Christy] commenced [his] employment on or about April 16, 2021.

(Emphasis Added.) This representation was false. 3M never consented to Christy's employment at CDT and provided Christy with no document reflecting such consent.[2]  In addition, CDT's

_____

[2] CDT's counsel ultimately acknowledged, at least tacitly, that no such documentation exists.

counsel provided a false job description for Christy suggesting that his job involved customer support rather than direct sales.

51.    But Christy is in fact engaged in substantial direct sales.  Moreover, in the months since he's been at CDT, he has solicited business from his former accounts at 3M, including business related to spindles.

### 1.    Christy Sends Highly Confidential Information to His Gmail Account Before Departing 3M for CDT.

52.    On February 6, 2021, while still employed at 3M, Christy sent highly confidential testing information on 3M grinding wheels to his Gmail account. The subject line was "personal stuff."  By emailing the testing information to his personal email account, Christy breached 3M's security policies. He also ensured that the information was outside the 3M system and in his control, and attempted to conceal his misconduct from 3M by using the misleading subject line.

53.    That same day, Christy emailed his Gmail account additional 3M confidential information. For the subject line, he misleadingly wrote "grinding articles from web."

54.    On February 15, 2021, Christy sent an email to a client contact at Gleason (a 3M customer) containing highly sensitive technical drawings 3M uses to create diamond rolls. In the email, he asks whether the drawings are current. "Just want to make sure from a quality standpoint nothing has changed . . . ."  While sending the technical drawings, Christy blind copied his Gmail address, thus secretly removing the technical drawings from 3M's system and placing them under his personal control.

55.    As 3M Global Security would later find, in the months leading up to his departure for CDT, Christy emailed highly sensitive 3M confidential information to his Gmail account *twenty* times. Those emails contained highly sensitive competitive information including PDFs, PowerPoint slides, and Excel spreadsheets.

56.     When confronted by 3M Global Security, Christy ultimately signed a document acknowledging that he had destroyed the confidential material he had taken.

57.     This representation was false.  On May 25, 2021, Christy emailed his CDT account from his Gmail account, forwarding a highly confidential spreadsheet Christy had emailed himself from his 3M email account on February 6, 2021, when still a 3M employee.  That spreadsheet contains, on information and belief, highly confidential customer information.

**2.      Christy Makes Sales Calls on Accounts He Serviced While at 3M.**

58.     By June 2021, Christy was back calling on his old 3M sales accounts in direct breach of his noncompete with 3M. In an email accidently sent to Christy's 3M email address after he had departed the company, Ryan Webb of Vallen, a 3M distributor, emailed Christy on June 4 to confirm a "CDT Wheel Trial Run for Weldon." Both Vallen and Weldon are 3M customers that Christy worked with in a sales capacity while at 3M.

59.     Likewise, on June 22, 2021, Christy was at Volvo, another of his former 3M accounts. During that sales visit on behalf of CDT, Christy directly competed against 3M, asking whether Volvo was happy with 3M spindles.

60.     3M treats its customer lists, the products its customers buy, and its price lists as confidential information.

**E.      Chad Wesner.**

61.     On June 8, 2021, Chad Wesner, then a 3M PG&F salesperson, submitted his resignation to join CDT. He informed Eisenberg, his supervisor: "I will be accepting a position with CDT, with duties of Technical Support for the sales team in Mexico and Canada. I will also be assisting the sales team at current CDT customers, outside the gear industry."

62.     At 3M, Wesner was one of Keene's closest associates. Wesner did not even request a waiver before declaring his intent to join CDT.

63.     On July 30, 2021, 3M wrote Wesner stating: "You did not request—and did not receive—a waiver to work at Continental Diamond Tool. Your employment with Continental Diamond Tool directly violates your Employee Agreement with 3M." 3M further stated: "3M hereby exercises its right under Section 3(F) of your Employee Agreement to require you to turn down your employment with Continental Diamond Tool."

64.     As of August 2021, Wesner continued to use his 3M laptop, using it to connect to the internet until 3M Global Security demanded its return.

65.     In September 2021, Wesner finally told 3M that he had joined CDT and had decided to "move on."

66.     Finally, in November 2021, 3M was informed that Engicom—which was one of Wesner's largest accounts while at 3M—had moved to CDT.

67.     Likewise, Keene and Wesner have been calling a 3M sales agent for Ford's sales plants asking her to begin selling for CDT.

## III.   CDT Knew About 3M's Employee Agreements and Procured Breaches by the Former Employees Anyway.

68.     Before filing suit, 3M made exhaustive efforts to resolve this dispute short of litigation. In the process, CDT hired Christy and allowed him to start work without a waiver from 3M. CDT also made the false claim, as alleged above, that it had documentation from 3M allowing the employment. Finally, CDT's announced that Chad Wesner was joining CDT without receiving approval from 3M for doing so. Finally, 3M received multiple reports that Paul Christy and Chad Wesner were openly flouting their post-employment obligations under the Employee Agreement.

69.     From its prior litigation with 3M and otherwise, CDT is highly familiar with 3M's Employee Agreement.

70.     On information and belief, CDT has intentionally procured numerous breaches of the Employee Agreement by the Former Employees, including but not limited to: (1) receiving from the Former Employees 3M's confidential information; (2) encouraging the Former Employees to solicit or help to solicit current 3M employees to join CDT; (3) encouraging the Former Employees to call on or service the same customers that the Former Employees called on or serviced at 3M; and (4) using 3M's confidential information in the performance of the Former Employee's current job duties at CDT.

71.     We do not need to guess why CDT has done so because it told us: It intended to make "Dream Team" made of the "valuable people and resources [3M] ha[s]" to allow CDT to make "a hell of a run."

## COUNT I (ALL DEFENDANTS)
## TORTIOUS INTERFERENCE WITH CONTRACT

72.     3M realleges and incorporates by reference herein the foregoing allegations of the Amended Complaint.

73.     CDT and the individual Defendants knew or should have known about the 3M Employee Agreement between 3M and the Former Employees.

74.     CDT and the individual Defendants have interfered with, and if not enjoined will continue to interfere with, the Former Employees' contractual obligations to 3M as set forth in the 3M Employee Agreement.

75.     CDT and the individual Defendants intended to harm 3M by interfering with the Former Employees' contractual obligations to 3M.

76.     On information and belief, CDT and the individual Defendants have intentionally procured the breach of these contractual obligations by recruiting and hiring the Former Employees who worked at 3M to (a) use 3M's confidential information for the benefit of CDT, (b) solicit their former 3M colleagues to join them at CDT, (c) develop, manufacture, market, or service competing products, or (d) call on their former sales accounts while with 3M.

77.     CDT's and the individual Defendants' interference is improper and without justification.

78.     As a direct and proximate cause of CDT's and the individual Defendants' tortious interference, 3M has been damaged in an amount to be determined at trial in excess of $75,000. In addition, 3M has suffered irreparable harm and will continue to suffer irreparable harm unless CDT's and the individual Defendants' tortious interference is enjoined by this Court. 3M is entitled to an injunction to prevent CDT's tortious interference and threatened further tortious interference.

## COUNT II (ALL DEFENDANTS)
## VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. 1836(b)

79.     3M realleges and incorporates by reference herein the foregoing allegations of the Amended Complaint.

80.     The individual Defendants and CDT had access to and acquired trade secret information belonging to 3M under circumstances giving rise to a duty to maintain the secrecy of this information and limit its use for the benefit of only 3M.

81.     On information and belief, the individual Defendants and CDT used or disclosed, will use or disclose, or threaten to use or disclose 3M's trade secret information without 3M's express or implied consent. Such use or disclosure constitutes misappropriation of trade secrets.

82.     In its role as the new employer for the Former Employees, on information and belief, CDT has accessed, used, or disclosed, or threaten to access, use, or disclose, 3M's trade-secret information.

83.     Likewise, in their role as employees of CDT, the individual Defendants, on information and belief, have accessed, used, or disclosed, or threaten to access, use, or disclose, 3M's trade-secret information.

84.     3M's trade secrets are related to products or services used in, or intended for use in, interstate or foreign commerce.

85.     3M has taken reasonable steps to maintain the confidential nature of its trade secrets, including but not limited to the information that CDT and the individual Defendants misappropriated and/or will misappropriate.

86.     On information and belief, CDT and the individual Defendants possessed 3M's trade secret information without any color of right.

87.     On information and belief, CDT's and the individual Defendants' actions in misappropriating 3M's trade secret information were done willfully and maliciously.

88.     CDT's and the individual Defendants' actions violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, *et seq.*

89.     As a direct and proximate cause of CDT's and the individual Defendants' misappropriation, 3M has been damaged in an amount to be determined at trial. In addition, 3M has suffered irreparable harm and will continue to suffer irreparable harm unless CDT's and the individual Defendants' misappropriation is enjoined by this Court. 3M is entitled to an injunction to prevent CDT's and the individual Defendants' misappropriation and threatened further misappropriation.

## COUNT III (ALL DEFENDANTS)
## VIOLATION OF THE INDIANA UNIFORM TRADE SECRETS ACT, Ind. Code § 24-2-3

90.     3M realleges and incorporates by reference herein the foregoing allegations of the Amended Complaint.

91.     The individual Defendants and CDT had access to and acquired trade secret information belonging to 3M under circumstances giving rise to a duty to maintain the secrecy of this information and limit its use for the benefit of only 3M.

92.     On information and belief, the individual Defendants and CDT have used or disclosed, will use or disclose, or threatens to use or disclose 3M's trade secret information without 3M's express or implied consent. Such use or disclosure constitutes misappropriation of trade secrets.

93.     In its role as the new employer for the Former Employees, on information and belief, CDT has accessed, used, or disclosed, or threatens to access, use, or disclose, 3M's trade secret information.

94.     Likewise, in their role as employees of CDT, the individual Defendants, on information and belief, have accessed, used, or disclosed, or threatens to access, use, or disclose, 3M's trade secret information.

95.     3M has taken reasonable steps to maintain the confidential nature of its trade secrets, including but not limited to the information that CDT and the individual Defendants misappropriated and/or will misappropriate.

96.     On information and belief, CDT and the individual Defendants possess 3M's trade secret information without any color of right.

97.     On information and belief, CDT and the individual Defendants actions in misappropriating 3M's trade secret information were done willfully and maliciously.

98.     On information and belief, CDT acquired 3M's trade secret information by improper means when it induced the Former Employees to breach their Employee Agreements by accepting their current roles at CDT.

99.     On information and belief, CDT acquired 3M's trade secret information by improper means when it induced the Former Employees to breach the Employee Agreement by breaching their duty to maintain the secrecy of 3M's trade secrets.

100.    The individual Defendants acquired 3M's trade secret information by improper means when they breached the Employee Agreement by breaching their duty to maintain the secrecy of 3M's trade secrets.

101.    CDT's and the individual Defendants' actions violate the Indiana Uniform Trade Secrets Act (IUTSA), Ind. Code § 24-2-3, *et seq.*

102.    As a direct and proximate cause of CDT's and the individual Defendants' violations, 3M has been damaged in an amount to be determined at trial. In addition, 3M has suffered irreparable harm and will continue to suffer irreparable harm unless CDT's and the individual Defendants' misappropriation is enjoined by this Court. 3M is entitled to an injunction to prevent CDT's and the individual Defendants' violations and threatened further violations.

## COUNT IV (ALL DEFENDANTS)
## UNFAIR COMPETITION UNDER INDIANA COMMON LAW

103.    3M realleges and incorporates by reference herein the foregoing allegations of the Amended Complaint.

104.    3M's employees, including the individual Defendants and the Former Employees, know the identities of and work closely with 3M's customers and, as a result, have a detailed understanding of customer-specific technical requirements that 3M uses to customize its abrasives products for customer-specific applications. On information and belief, CDT and the individual

Defendants has undertaken efforts to recruit and hire 3M employees to take advantage of those employees' relationships with and particularized knowledge about 3M's customers in order to unfairly compete with 3M in the abrasives industry.

105.    3M's employees, including the individual Defendants and the Former Employees, also know the identities of and work closely with 3M's suppliers and, as a result, have a detailed understanding of 3M's costs and materials used in its superabrasive product lines. On information and belief, CDT and the individual Defendants have undertaken efforts to recruit and hire 3M employees to take advantage of those employees' relationships with and particularized knowledge about 3M's suppliers in order to unfairly compete with 3M in the abrasives industry.

106.    On information and belief, CDT has embarked on a campaign to recruit and hire 3M's employees in order to capitalize on the confidential know-how of 3M's former employees and to unfairly bolster its competitive business, to the detriment of 3M.

107.    On information and belief, CDT and the individual Defendants intend to harm 3M by recruiting and hiring 3M employees to work in substantially similar roles in its competitive business and by soliciting the use or disclosure of 3M's confidential information.

108.    CDT's and the individual Defendants' actions constitute unfair competition, including improper and unlawful employee raiding or employee poaching.

109.    On information and belief, a primary purpose of CDT's recruitment and hiring of 3M's employees is to give CDT an unfair advantage in developing and selling its superabrasives product lines.

110.    CDT's and the individual Defendants' actions constitute unfair competitive practices as, on information and belief, they have already used, or will use, their knowledge of

3M's confidential information, including the identities of other employees with vast knowledge of confidential information and trade secrets, to engage in unlawful employee raiding.

111.    CDT's and the individual Defendants' actions constitute unfair competitive practices as they have already unlawfully solicited the Former Employees and other current and former 3M employees, and, on information and belief, will unlawfully solicit additional, knowledgeable 3M employees.

112.    On information and belief, CDT has already unlawfully induced the Former Employees to use or disclose 3M's confidential information and trade secrets, or will unlawfully induce the use or disclosure of 3M's confidential information and trade secrets information to gain a competitive advantage.

113.    On information and belief, the individual Defendants have already used or disclosed 3M's confidential information and trade secrets to gain a competitive advantage for CDT.

114.    CDT's and the individual Defendants' actions constitute unfair competitive practices as, on information and belief, they have already used or disclosed, or will use or disclose 3M's confidential information and trade secrets which it unlawfully obtained.

115.    As a direct and proximate cause of CDT's and the individual Defendants' unfair competitive practices, including employee raiding and use of confidential information and trade secrets, 3M has been damaged in an amount to be determined at trial. In addition, 3M has suffered, and will continue to suffer irreparable harm unless CDT's and the individual Defendants' conduct is enjoined by this Court. 3M is entitled to an injunction to prevent CDT's and the individual Defendants' unfair competitive conduct and threatened further unfair competitive conduct.

## COUNT V (INDIVIDUAL DEFENDANTS)
## BREACH OF CONTRACT

116.     3M realleges and incorporates by reference herein the foregoing allegations of the Amended Complaint.

117.     Each of the individual Defendants signed 3M's Employee Agreement in connection with their former employment by 3M.

118.     Upon information and belief, the individual Defendants breached 3M's Employee Agreement by: (a) using 3M's confidential information and trade secrets while employed by CDT, following their departure from 3M; (b) soliciting their former 3M accounts on behalf of CDT; and (c) soliciting their former 3M colleagues to leave 3M and join CDT.

119.     As a direct and proximate cause of the individual Defendants' breaches of 3M has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, 3M prays for judgment as follows:

1.     An Order granting preliminary and permanent injunctive relief preventing CDT from engaging in the wrongful conduct described herein;

2.     Awarding 3M damages for the breaches and tortious conduct described herein;

3.     Awarding 3M damages for any unjust enrichment caused by Defendants' misappropriation of trade secrets that is not addressed in computing damages for actual losses to 3M;

4.     Exemplary damages in an amount two (2) times the amount of the combined actual and unjust enrichment damages;

5.     Awarding 3M such interest, reasonable attorneys' fees, and costs as is available under the law; and

6.      Awarding 3M such other, further, or different relief as the Court deems just and proper.

Respectfully submitted,

Dated:  January 28, 2022            **FAEGRE DRINKER BIDDLE & REATH LLP**

s/ *Emanuel L. McMiller*
Angela Kelver Hall  (#26991-71)
Emanuel L. McMiller (#35649-71)
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
P: (317) 237-0300
F: (317) 237-1000
angela.hall@faegredrinker.com
manny.mcmiller@faegredrinker.com

Randall E. Kahnke (*Admitted Pro Hac Vice*)
John W. Ursu (*Admitted Pro Hac Vice*)
Erica Abshez Moran (*Admitted Pro Hac Vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
P: (612) 766-7000
F: (612) 766-1600
randall.kahnke@faegredrinker.com
john.ursu@faegredrinker.com
erica.moran@faegredrinker.com

*Attorneys for Plaintiffs 3M Company and 3M*
*Innovative Properties company*

## CERTIFICATE OF SERVICE

I certify that on January 28, 2022, I filed the foregoing via the Court's CM/ECF system.

Counsel of record has agreed to accept service on behalf of the new parties and will obtain notice

of this filing through the CM/ECF system.

*/s/ Emanuel L. McMiller*