UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| 3M COMPANY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No. 1:21-CV-274-HAB |
| | ) |
| CONTINENTAL DIAMOND TOOL | ) |
| CORP., et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This motion is the second Rule 12 motion filed in this employment contract dispute. After succeeding in part on a Rule 12(b)(6) motion attacking Defendants' initial counterclaim, Plaintiffs have now filed a Rule 12(c) attacking the amended counterclaim. The motion for judgment on the pleadings is now fully briefed (ECF Nos. 60, 64, 68) and is ripe for determination.

**I.      Factual and Procedural Background**

The facts here are not complex. Paul Christy ("Christy"), Timothy Keene ("Keene"), and Chad Wesner ("Wesner") (collectively "Individual Defendants") all formerly worked for Plaintiffs. Each left that employment (voluntarily or involuntarily) and went to work for Continental Diamond Tool Corp. ("CDTC"). Plaintiffs maintained the Individual Defendants' email and voicemail accounts even after they left Plaintiffs' employ.

Based on these facts, Defendants first alleged these causes of action via counterclaim: two counts of interference with business relationships related to Christy and Wesner's employment with CDTC; a count requesting a declaration that Plaintiffs' employment agreements are overbroad and unenforceable; a violation of 42 Pa. Cons. Stat. § 8316 for Keene and Christy; a

violation of Fla. St. Ann. § 540.08 for Wesner; a violation of the Lanham Act on behalf of the Individual Defendants; and a count of unfair competition on behalf of CDTC.

Plaintiffs moved to dismiss the counterclaim under Fed. R. Civ. P. 12(b)(6). In June 2022, the Court granted in part and denied in part Plaintiffs' motion. (ECF No. 48). The Court dismissed, without leave to amend, Defendants' claims under the Lanham Act, their claims under Pennsylvania and Florida statute, and their request for declaratory judgment. The Court dismissed CDTC's claim for unfair competition but granted Defendant's leave to amend that claim. The motion was denied in all other respects. (*Id*. at 23).

Defendants filed their amended counterclaim in August 2022. (ECF No. 51). Defendants' counterclaim was now trimmed to only three claims: a claim of tortious interference with business relationships by CDTC and Christy; a claim of tortious interference with business relationships by CDTC and Wesner; and a claim of unfair competition by CDTC. Plaintiffs promptly answered the counterclaim (ECF No. 58) and filed this motion for judgment on the pleadings.

## II. Legal Discussion

### A. *Judgment on the Pleadings Standard*

Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. See Fed. R. Civ. P. 12(c).[1] The Court reviews Rule 12(c) motions under the same standard as a motion to dismiss under Rule 12(b). *See Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if "it appears beyond doubt

---

[1] Defendants preliminarily argue that the Court should not even hear the motion because Plaintiffs have already sought dismissal under Rule 12(b)(6), describing the motion for judgment on the pleadings as a "serial motion." (ECF No. 64 at 4). Certainly, the resources of the Court are best used when all bases for judgment are included in a single motion. Yet the Court's research finds no blanket prohibition against the filing of a Rule 12(c) motion following a separate dispositive motion. See, e.g., *Am. Trucking Ass'ns, Inc. v. New York State Thruway Auth.*, 238 F. Supp. 3d 527, 539 (S.D.N.Y. 2017) (permitting the filing of a Rule 12(c) motion after granting partial summary judgment). Defendants point to no authority holding that the Court can't rule on Plaintiffs' Rule 12(c) motion, so the Court will proceed to review that motion on its merits.

2

that the plaintiff cannot prove any facts that would support his claim for relief." *Craig's, Inc. v. General Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir. 1993) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)). To succeed, the moving party must demonstrate that there are no material issues of fact to be resolved. "[W]e will view the facts in the complaint in the light most favorable to the nonmoving party," *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995); "[h]owever, we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

**B.     *Defendants have Failed to Plead a Claim for Tortious Interference with Business Relationships***

The parties largely agree on the requirements for a well-pleaded claim of tortious interference with business relationships. The parties engage in no choice of law analysis, instead discussing the claim under both Indiana and Minnesota law. If the claims are analyzed under Indiana law, Defendants are required to allege "some independent illegal action" to support the claim. *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003). If the claims are analyzed under Minnesota law, Defendants are required to allege that "the interference is intentional and independently tortious or unlawful, rather than merely unfair." *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 218 (Minn. 2014).

Plaintiffs' primary argument is that breach of contract cannot constitute "illegal" conduct under Indiana law or "independently tortious" conduct under Minnesota law. *Howmedica Osteonics Corp. v. DJO Global, Inc.*, No. 1:17-cv-938-SEB-TAB, 2018 WL 3130969, at *6 (S.D. Ind. Mar. 15, 2018) (collecting cases); *Brand Advantage Grp., Inc. v. Henshaw*, Civ. No. 20-225 (JRT/HB), 2020 WL 1891772, at *8 (D. Minn. Apr. 16, 2020). Because, in Plaintiffs' view, Defendants' counterclaims are premised mainly on the allegation that Plaintiffs violated

3

employment contracts, Plaintiffs assert that the counterclaims cannot state a viable tortious interference claim.

Defendants don't meaningfully dispute Plaintiffs' contract-related arguments. Instead, they return to an argument that was largely rejected by the Court in ruling on Plaintiffs' Rule 12(b)(6) motion; namely, that Plaintiffs' act of failing to promptly deactivate the Individual Defendants' email and voicemail accounts violated state privacy laws. But this time Defendants go beyond the specific state statutes relied on in their initial counterclaim, instead arguing that Plaintiffs' conduct constituted various state common law torts. The violation of these state law torts, they claim, satisfy the requirements of illegal or independently tortious conduct.

The problem with Defendants' reliance on state law privacy torts now is that the argument conflicts with what they pleaded in the amended counterclaim. In Count I, CDTC and Christy's tortious interference claim, Defendants identify the intentional interference as "failing to respond to Christy within a reasonable period of time and . . . breaching its own agreement but still insisting upon performance from Christy." (ECF No. 51 at 5). Similarly, in Count II, CDTC and Wesner's tortious interference claim, Defendants identify the intentional interference as "breaching its own agreement but still insisting upon performance from Wesner." (*Id*. at 6). Indeed, the email/voicemail issue is not referenced in the context of a legal claim until deep into Count III, CDTC's unfair competition claim. (*Id*. at 7). Even if violation of these state privacy torts could form the bases for a tortious interference claim, a pleading "may not be amended by the briefs in opposition to" a Rule 12 motion. *Diamond Saw Blades Mfrs.' Coalition v. Diamond Tools Tech., LLC*, 504 F. Supp. 3d 927, 945 (S.D. Ind. 2020). To borrow Judge Tonya Walton Pratt's well-turned phrase, Defendants' "belated explication cannot cure the elemental inadequacy" of their counterclaims. *Id*.

4

Without the state law privacy violations, Defendants leave the Court with nothing on which to base Counts I or II. They are, then, inadequately pleaded under Minnesota or Indiana law. Plaintiffs' motion for judgment on the pleadings as to those counts will be granted.

C.   *Defendants have Failed to Plead a Claim for Tortious Interference with Contractual Relationships*

As a fallback position, Defendants claim that they have stated a claim of tortious interference with contractual relationships. The Court cannot agree.

Under Indiana law, Defendants must show, among other things, that Plaintiffs intentionally induced a third party to breach a contract with Defendants. *Coleman v. Vukovich*, 825 N.E.2d 397, 403 (Ind. Ct. App. 2005). Under Pennsylvania law, Defendants must allege at least an intent on the part of Plaintiffs to harm Defendants by interfering with a contractual relationship between Defendant and a third party. *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. 2009).

The Court has scoured the amended counterclaim and has found no facts that would support these necessary elements. As Plaintiffs note, there is no allegation that any third party, presumably a customer, breached a contract with any of Defendants because of Plaintiffs' conduct. There is no reference to any contract between Defendants and a third party. The amended counterclaim, then, does not plead a claim of tortious interference with contractual relationships under either applicable state law. This backup argument does not save Counts I or II.

D.   *Defendants have Failed to Plead a Claim for Unfair Competition*

While dismissing Defendants' last unfair competition counterclaim, the Court stated:

> Under Minnesota law, "[u]nfair competition is not a tort with specific elements; it describes a general category of torts which courts recognize for the protection of commercial interests." *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 305–306 (Minn. Ct. App. 1987). Torts included within this general category are product disparagement, *Advanced Training Systems, Inc. v. Caswell Equipment Company,*

5

> *Inc.*, 352 N.W.2d 1 (Minn. 1984), tortious interference with contractual interests and improper use of trade secrets. *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628 (Minn. 1982). For a claim to survive dismissal, it must identify the tort that is the basis for the unfair competition claim. *Zimmerman Grp., Inc. v. Fairmont Foods of Minn., Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994). Because CDTC has alleged only a general category of torts rather than a specific cause of action, its unfair competition claim will be dismissed.

(ECF No. 48 at 20). The Court did, however, allow Defendants to amend their counterclaim to allege a tortious basis for the unfair competition claim.

The torts that Defendants have chosen to rely on are the tortious interference claims that are pleaded in Counts I and II of the amended counterclaims. And Defendants seemingly concede that the unfair competition claim rises or falls with Counts I and II. (ECF No. 64 at 10). Because, as set forth above, those counts have fallen, so, too, must Count III.

E.   *Defendants will be Given the Opportunity to Replead*

The only remaining issue is whether Defendants will be given another opportunity to replead. Defendants' argument on this point, essentially, is that Plaintiffs have raised arguments that could have, and probably should have, been raised in the motion to dismiss. Had they done so, and the motion to dismiss was granted, they would have had a chance to replead. Defendants don't believe that Plaintiffs' strategic decisions should dictate their right to amend.

On this point, the Court agrees. As with some claims in the initial counterclaims, Defendants' pleading issues are matters of omission rather than commission. Everyone agrees that there are some facts that could be alleged that would allow the counterclaims to survive a Rule 12 motion. Whether those facts exist here is something that Defendants should carefully consider before filing any amended pleading.

**III.     Conclusion**

For these reasons, Plaintiffs' motion for judgment on the pleadings (ECF No. 59) is GRANTED. Defendants are GRANTED leave to amend their counterclaims consistent with this order and the order on Plaintiffs' motion to dismiss (ECF No. 48). Any amended counterclaim must be filed on or before February 16, 2023.

SO ORDERED on February 2, 2023.

      s/ *Holly A. Brady*
     JUDGE HOLLY A. BRADY
     UNITED STATES DISTRICT COURT